The next case is 4-13-0648 Richard Miller v. Township of Philo et al. Attorney Allard is here on behalf of the appellant and Attorney Green is here on behalf of the appellee. Mr. Allard you may proceed. I have as my client today a man who is in the exercise of due care and caution. There is no allegation of even simple speeding out in the country in this case by my client. There are no drugs, no alcohol, no disregard of his stop sign, nothing that anybody has alleged that he was doing wrong. He was driving his pickup truck through a rural intersection with high corn that inhibited the view of people coming transverse to him. He reached the intersection in question and a few feet beyond that intersection in his direction of travel was a rural bridge of the kind that most of us are familiar with being out in the country. Just a simple little two span bridge with a little bit of railing and a protrail. He is then struck on his driver's door by a pickup truck which failed to yield to him coming from his left therefore from that truck's right. He hits him squarely. This isn't a front end intersection collision. This is where my client is well into or exiting in his direction west and he gets hit squarely in the door. He is pulling an empty flatbed trailer. Another indication that he could not have been driving at an excessive rate of speed or that thing would have just plain bounced off the highway. That stands to reason. So what happens is the right side of his vehicle goes into the corner of the guard railing leading up to this little bridge. We are talking about feet not yards. It is located just past the road that forms the intersection with the road he is on. When he is hit, it diverts the direction of his pickup and he strikes the guard rail leading up to the bridge. Classic Illinois guard rail. Now we have alleged in our affidavit and in the complaint that this guard rail had support, concrete support to anchor it and keep its integrity which was crumbling and had lost its integrity. But the guard rail itself was not attached properly and was in need of maintenance. These are untested questions because we never got far enough for a Finder fact to get to them. He goes through the pushed out and bent back guard railing and down into a ditch. The truck turns over on the way down. He lands with his head and shoulders into the top of the truck which is now the bottom of the truck. He sustains brain injury and has two surgical shoulders as a result. Now we filed our complaint and this complaint is a cross complaint against Meharry and the Township for not maintaining, repairing and then a couple of other claims that I am going to go light on because the real gist of this case is about failure to maintain that guard rail. May I ask you in terms of the parties, why is it that Lisa Miller is not appealing? You know that is the first time I have noticed that and you are right. I think she is named as the appellant but not in the heading. I don't know the answer to your question right off the top of my head but she certainly does have the claim and intends to try to assert it. But if I have screwed up there I apologize to her primarily but I don't think I did. I think she is in there substantively but just isn't in the heading. Isn't it at all? She needs to be in your notice of appeal. She needs to have been named in your notice of appeal. Well if she is not in that then that is my fault. But nevertheless he is the one injured and has a substantial claim. I mean it is nothing like a divorce or anything like that. I am not concealing some reason that she is not a part of the thing. It is just things get past you when you are 70 I guess. But at any rate the complaint alleged as its strongest component, the failure to maintain, in other words the crumbling condition that bended unattached metal destroyed the structural integrity of that guard rail and prevented our truck from skating along the guard rail and staying up on the surface of the bridge rather than flipping over and going into the ditch. Now counsel's cases I think are skillful but they are kind of like the guy in the circus with the knives who throws at the spinning person and manages to miss every time so that when it is over the person climbs down and hears his outline in the knives. Almost all the cases that he has are not similar to the fact situation in this. They involve something that happened with a roadside hazard, a ditch. Well what has a ditch got to do with a failed guard rail or climbing over the center barrier up on Lakeshore Drive and having a collision with oncoming traffic. That is not the same thing. Another one with a fire engine going over a median losing control and killing somebody in the oncoming lane. Our case has to do with two torque features. The one in the truck who hit him and our contention is that the second torque feature, Meharry, deprived us of the opportunity to escape from this flipping over the side of the bridge and severe head and shoulders injury. And therefore is indeed the direct proximate cause of the serious injuries in this case. Counsel let me ask you a question. You say this case is basically about failure to maintain that guard rail and bridge and all of that. So are you conceding then that you are not challenging the dismissal of any other claims that you asserted? Not really. In briefing this thing and trying to talk to you and not stretching reality, the signs were not present and they were installed after the accident. But indeed how could that have prevented us from hitting a bad guard rail and flipping into the ditch? So I'm not going to seriously tax you with an argument on that point. And I think he's right about his defendant not having the authority to erect initially signs, you know, stop signs or yield. And I can't prove that those were up there before so I'm not going to argue that one. And also that the corner was too high and should have been cut. Maybe it's factually correct but I don't think they have the duty to do that. So it's really about the guard rail. Sure. Now the cases that counsel cites include the Meharry case. I walked up here without that. Let me retrieve it. The Mitchell Act case, this is one side of the counsel in which he weakly concedes that there is a duty statement. Let me get to that in a second. Because the real problem arises when we get here to argue their combined 2615 and 219 motion, which under the commentary on that section by Jenner and Block, indicates that if you're going to argue both of those as a combined motion you should split them out so the court knows whether you're going to be entitled normally to a replete on 615 decisions or a bar on 619. Did you object, Mr. Aller, in the trial court? To that? To the form of the motion? I did not. I assumed that the judge would sort it out but I don't think he did. Now he said, the purpose of this railing is, and this is a trial judge, the intended and permitted use, which is reasonably foreseeable, and that's a key term, is that this railing would withstand the impact of two crashing trucks. He misstates it. One pickup truck hit it, not two. And thereby prevent one truck from going over the bridge and exacerbating the effect of the initial collision. The exacerbation part he does grasp correctly. That's the gist. But backing up, is this the intended and permitted use of the railing? And it is my judgment that Filo Township and Maharry don't have a duty to provide a bridge to safeguard such a collision and therefore it is not a material issue whether or not it was properly maintained. Now if you take a look hard at that one, that would mean that every bridge could simply ignore putting up a railing. And there would therefore be no opportunity for the installer of the bridge to be criticized because he didn't put one there. And it's not necessary, and he didn't have to, and so he didn't. Now that's preposterous. And we go through, because this was, we think, out of the blue by the judge, an opinion that not only found facts in a motion where the only question is, are there divergent evidence streams that should be tested prior to the fact.  Now, having a bridge railing is not required, and there's no duty to maintain it. Now, after you get done with your mouth dropping open, you try to go back and argue that one, and that's out of the blue. Counsel had argued that in a sentence or two in his brief, but then what led up to this was, if there had been no railing there at all on the bridge, there'd be no duty. And I think essentially what the plaintiffs are arguing is that we should have had some kind of concrete railing. We never argued for a concrete railing. The only comment about concrete was the crumbling foundational pillar. Nobody said anything about putting up a concrete railing. Only alleged bad maintenance in the existing bridge and its concrete foundation. We think that's a red herring, and it led to the court making the finding of fact, which violated the rules on what you are entitled to find on a 2619. Now, where it gets confusing is, if he said, we have failed to allege a duty that ought to have been a 2615 finding at worst, that we could then go back and make a motion to amend. This comes in the wake of an extremely accelerated briefing schedule. I mean, a matter of days, not months. And we call this to the court's attention by using the term ambush. Now, the counsel makes a point of the affidavit, I think it's 191, but the footnotes to that say that's a reiteration of Rule 15, which has always said that your pleadings and your allegations, as long as they are before the court, can support your claim that you're being hurried into a decision. We had all of those things, and we argued that it was an ambush, so there was no substantive misleading of counsel or anything else. Now, finally, because this came up on the spot, we have cited to you published engineering data. This isn't any different from the more modern trend in many cases, including civil rights cases and other cases, to cite to scientific evidence on appeal. Now, this is only to indicate that there is the recognition of a duty to put up a longitudinal barrier, which includes bridge railings. All of these cites are through that. Counsel, what's the allegation in your complaint that alleges that duty? What is the allegation in your complaint that alleges that duty? That duty? Yes. Well, let me try to find it. I'm getting close. Milton breached these duties by – well, it's Milton. That's the guy with the car. A duty to construct and maintain safely the intersection and bridge under this cause of action. It's count three. Maintain being the key word. Duty to provide visibility of the intersection, all those other things that I'm not arguing strongly. But O, failing to maintain the bridge steel and concrete so as to prevent it from crumbling and destroying the structural integrity of the safety rail. Failing to shore up the bridge rail with adequate bracing to keep it in place and survive a collision while keeping and colliding the vehicle on the road. Now, what he says we did wrong is under the cases which he cites that hold that you – yeah, we've got a duty here with these bridges and railings, but only for normal conditions. Pretell what is a normal condition for a safety rail. It's to prevent additional harm or, as it says in some of these cases, leaving the roadway in order to suffer these severe injuries. He's driving across the bridge. He's done nothing by himself except get hit from the side. He then has a component of sideways movement in addition to his straight-ahead movement, and he hits it at an angle. He doesn't hit it straight on. One of the cases that counsel cites is somebody leaving the road and driving around the Corridor of Pines. Well, he had to hit something eventually. Now, this isn't that. This is not losing control as in the Burnaby case and leaving the road due to driving in mud or dirt or something in a one-car accident. You finally hit the railing, and now you're going to sue the railing for stopping you very shortly. There's another case that's important. That's Michellac v. County of LaSalle. That's a case cited by counsel and at the third paragraph marked, we agree that the circuit court incorrectly determined that the county owed no duty to the plaintiff. In fact, the cases in which the county itself argues forcefully that a duty should be owed under those circumstances. The recent Supreme Court case of Kunitz v. Brennan, citing, stands for the proposition that a duty is owed where the occurrence involved is reasonably foreseeable. Pretell what is more foreseeable than that a guardrail is there to guard you and keep you, as these cases further develop, on the roadway scraping along that guardrail but not leaving the side of the bridge. Now, that only stands to plain common sense. If a state are putting up things made out of balsa wood in the illusion that they're a guardrail, that would be disastrous and a terrible piece of public policy. We're spending money, allegedly, to maintain these things. CODA. I mean, look what the answer is. Counsel files his affidavits that nobody's done any construction work to stay out of the statute of limitations problem since 1982, and they say that they've not seen any construction work on the bridge. Query. Does that not include repair work on the railing? They didn't see that either. Why is that important? Because it didn't happen. There was no repair work on that railing, and the state's own reports, which were part of the partial discovery that was received and put to the court, indicate that there are reports missing all bridge railings and sections. And it goes on for about five of these reports, which say the same thing and indicate that the Northwest approached guardrail damaged by traffic. There is moderate bridge growth, blah, blah, blah, and all four curled end sections are damaged by traffic. Now, this is what the state has found repeatedly, and this is what we got in our initial course of discovery. We cited that to the court. So this isn't something that happened the day before or an imaginary bad condition. The state noticed it. So I see my time is up, and I thank you. Thank you, counsel. Mr. Green? May it please the court? Mr. Allard? Circuit court got it right here. Judge Jones properly dismissed all of the claims against my clients, the township and the road commissioner. Counsel, did the trial court make a finding that a municipality has no duty to maintain a guardrail? I don't think that was its ruling. I think the ruling was that the intended purpose of the railing was not to withstand a collision that involves two pickup trucks in the middle of an intersection. Well, that's a factual consideration. I'm talking about an alleged duty to maintain or an alleged failure to maintain a guardrail because that's the stage of the case, the plating stage here, when the trial court made its ruling here. And plaintiff had alleged a failure to maintain the guardrail, correct? That is correct. So, unless the trial court made a finding that there is no duty to maintain a guardrail, why should that result in dismissal of that claim? Well, of course, I was coming at it from two angles, 2-615 and 2-619. And to me, this case is no different than the DeBenefetto, the Supreme Court case from 1992, and the Burnaby case from the 3rd District, which was also from 1992, where the holdings of those cases are that the township ordinarily has a duty to maintain a bridge railing that it owns. There's no duty of care. All you have to do is look at whether the intended purpose of the bridge was to withstand a crash that occurs under abnormal driving circumstances. And if that's not the intended purpose, there's no duty, and we're provided with immunity under the Tort Immunity Act. Well, in terms of what the forces were that were in play here, I mean, that's a factual determination, isn't it? I don't think so, Your Honor. I think even if you just, let's just focus first on 615. I believe that the plaintiffs failed to state a claim for which the court can grant relief, even if you just focus on the four corners of the pleading. And Mr. Allert explained it pretty well. You've got an accident where the impact between the two pickup trucks was in the middle of the intersection. So Mr. Milton's driving north. Mr. Allert's client is driving west. There's a significant collision in the middle of the intersection, based on the allegations in the complaint, because, according to Plaintiff Miller, Mr. Milton was driving at a high rate of speed. The complaint sets forth that both vehicles involved were pickup trucks. The complaint further alleges that after this significant impact in the middle of the intersection, that the Miller car, which had been traveling west, was diverted in a rightward or northwest angle and strikes the guardrail, which was northwest of the intersection. Not in the middle of the intersection, but northwest of the intersection. So the cars weren't on the bridge when the accident occurred? Absolutely not, according to the allegations in the complaint. And so that's where there's a failure to state a claim, because we're entitled toward immunity. If you look at the four corners of the complaint, that's abnormal driving circumstances. And in the Supreme Court's decision in DiVenedetto, which was somewhat dissembled factually, the trial court granted a 2-6-15 motion, and they were ultimately affirmed by the Supreme Court, because of these abnormal driving circumstances. So the intended purpose of the—there was a ditch that was involved in the DiVenedetto case, a steep ditch that was right next to the roadway, and the court further went on to hold in DiVenedetto that not only was there no duty, but as a matter of law, no proximate cause, because the proximate cause would have been the erratic driving by the driver in that case, just like the proximate cause of the accident here, according to Mr. Aller's client, was the actions of Mr. Milton, who was driving north at a high rate of speed and collides with Miller's car in the middle of the intersection. The one case that I think is really on point is Third District in that Suburnaby case, where there was a bridge guardrail involved, and the expositive motion was granted and affirmed by the Third District. Justice McCuskey wrote that opinion. And what happened there was that the plaintiff's Jeep left a paved road, went into a soft shoulder, and then ran through a guardrail that abutted the end of the bridge. The car went into the ditch. And in that case, there was no duty, because that was not the intended purpose of the guardrail, just like in this case, to withstand that kind of an accident. The facts are more compelling here, because in Burnaby, that was a single-car accident. Here, you've got two cars in the initial collision. And I think that's what Judge Jones was saying. He didn't say that two – I don't think he meant to say that two trucks impacted the bridge. That's not in the four corners of the complaint. Only the Miller truck did. Okay, and you're saying within the four corners of the complaint. You're talking about the first and only version of this complaint. Is that right? Yes. Is there a problem with the plaintiff not having had an opportunity to replay it for 2615? If you think that it's deficient in some way? I don't think so under the circumstances of this case. There's no indication of what he could do to replay that would create a cause of action. Okay, and it's because what you're saying is, given the nature of the collision, it could never result in a duty on the part of the municipality to maintain the bridge railing? Not under the circumstances of this case. And the circumstances of this case being a collision at an intersection that results in the vehicles being pushed into the bridge railing? Is that it? Diverted from the middle of the intersection to the bridge railing, which is northwest of the intersection. Okay. Still counsel, and I don't mean to belabor it, but ultimately there's a determination being made by the trial court that the bridge railing was not meant to withstand the forces that were apparently imparted on it by the vehicles. Is that right? Right. And what does the trial court know about these forces? Only what's based on the allegations and the complaint, and that is you've got two pickup trucks. One's alleged to be going at a high rate of speed. Collision in the middle of the intersection, which causes the Miller truck to be diverted from going west to northwest. But even in their facts in the brief in this appeal, I think there's some reference to the Miller truck moving at a rightward angle after being struck in the middle of the intersection. So this is not like a single car accident where you've got a glancing blow to a guard rail. You've got a rightward angle, and that's the only inference that can be drawn from the allegations in the complaint. But if I can move on to my 219 argument, there are photographs that are in the record that are undisputed that show the significant damage to both trucks. We know it's an abnormal situation. And then there are seven vertical posts on this bridge railing. And even after this accident, only one of the railings was detached, one of the vertical posts, which is further evidence of the rightward angle that the Miller truck would have taken after a significant collision in the middle of the intersection. And I know that under 2619, affirmative matter can include this tort immunity defense. So that's our position. I think either under 2615 or 2619, the court got it right. Tort immunity applies. And Mr. Aller made a reference to the Mitchell Act case, which I had cited in my brief. That's a 1984 decision from the 3rd District, which would have preceded the Burnaby decision. Counsel, let me ask you, but what about the assertion that the Tort Immunity Act doesn't apply to failure to conduct proper maintenance? I guess I would question whether that's the issue. I think the issue, again, is what's the intended purpose of the guardrail. And if the intended purpose is not to withstand being struck by a truck moving at a rightward angle after a significant collision in the middle of an intersection, then there's no duty of care. And then, of course, if there's duty of care, there's no negligence. But you don't believe that determination as to what it was intended to withstand, you don't believe that's a factual determination? No. Duty is typically a legal issue. And the court's ruling here is consistent with what the Supreme Court was looking for to be even a better case. And then in this Mitchell Act case, which is 30 years ago, that was a single-car accident. It doesn't look like the defendant, the county in that case, even asserted Tort Immunity. And what really happened there was that the bridge railing withstood the accident, but it caused the plaintiff's leg to be amputated. And so one of my arguments in the trial court here is, again, we could have put up a brick wall that would have perhaps prevented Mr. Miller's truck, which had a flatbed trailer attached by the way, going down into the creek, but then his truck probably would have split in half. So it's a no-win situation for us. I mean, we could put up something that could prevent everything from going into the, any kind of vehicle from going into the creek, but it's still going to cause injury because the car's going to split in half if the bridge can withstand this type of impact. And when I read the plaintiff's brief, I was confused as to just exactly what they were appealing. And it appears that it's only duty to maintain. And I've set forth, just to be careful, other arguments dealing with the other allegations of negligence. I mean, there's no question that a township does not have a duty to install stop signs, yield signs. There's no duty to remove crops near the intersection. We've also argued that there's no basis for the negligent design or construction allegation. There's a 10-year statute limitation. The record is crystal clear. The bridge and the railings were constructed in 1982. The accident was 27 years later. And there's an affidavit from one of the township officers or personnel indicating no design or construction work during the 10 years prior to the accident. So any design or construction claim is time-barred. And as far as whether we had a duty to maintain, the Tort Immunity Act holds under the circumstances of this case that there is no duty. So for these reasons, we would ask that the Circuit Court be adjourned. Thank you. Counsel? Mr. Aller? I'm sorry. Well, counsel makes a lot of representations that might be true. But they are fact-based. And there are no facts in this record to justify this judge to opine about the amount of force that he's implying was present in this collision. Nor is there anything in the record to indicate what is the angle at which the plaintiff's truck continued mostly west but somewhat north to strike this railing. What's the angle that he hit the railing? It could have been going very fast because, as counsel says, he only took out one of these pillars and bent the guard railing and then went through that hole and went upside down. So there's no basis for talking about abnormal use of the highway. Nothing indicating that we were doing anything other than driving down the road and minding our own business on a Saturday morning trying to buy a truck to take back to work on it or a vehicle of some kind to put on that flatbed. And he gets hit? Is that an abnormal use of the highway? No. It's reasonable and foreseeable when you put up a guard railing that the reason you put it up is something's going to hit it. The abnormal use would be if you're staging a race on there or if you're parachuting the truck down and it lands on the railing. That's abnormal use. Driving down the road looking for an old clunker to buy, that's not an abnormal use. So anything he could say would, by his argument, constitute an abnormal use. If you hit the railing, that's an abnormal use. No. If you're trying to do a skateboard on the railing, sort of, that's an abnormal use. Now, there's nothing in this case to justify anything other than all of these cases which say it's reasonable and foreseeable. That's the basis for the duty. Now, the other thing is the protection for the defendant in this case is comparative negligence. He's got a perfectly good argument that the vast majority of this was caused by the speeding truck, but it's an old-fashioned, outdated, contributory negligence-based argument to say, we've got to immunize the second defendant here because it would be unfair for him to be an equally responsible defendant under a judge. So we've really taken care of this by talking about the more remote cause, maybe being very minimal or that finder could find non-existent. But it's not for the judge to speculate about the purpose of the railing, what the forces were that were involved, and what he thinks in his mental picture was the collision. There are experts, engineers, records, and the records of the state finding that this bridge was in bad repair, which it did before, and that's part of what's before you at 181 in the record. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.